**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Brayan Noguera Campos

Petitioner

v.

Todd Blanche, et al.,[1]

Respondents

Case No.: 2:26-cv-00671-JAD-EJY

**Order Granting Petition for Writ of Habeas Corpus and Denying as Moot Motion for Temporary Restraining Order**

[ECF Nos. 8, 14]

Petitioner Brayan Noguera Campos is a Venezuelan citizen who entered the United States through a port of entry at the California border in September 2024.  He was immediately released into the country on immigration parole and was living in Montana when he was detained by Immigration and Customs Enforcement (ICE) agents on December 3, 2025.  ICE classified him as an "arriving alien" and detained him under 8 U.S.C. § 1225(b), which allows for mandatory detention without the opportunity to seek release on bail.

In March 2026, Campos filed a pro se petition for a writ of habeas corpus under 8 U.S.C. § 2241, contending that his detention violates his due-process rights.  I appointed him counsel, and he filed an amended petition contending that his detention without a bond hearing violates his due-process rights and that he is properly detained under § 1226(a)—which guarantees bond hearings to noncitizen detainees—but that his attempts to seek bond were thwarted by an immigration judge (IJ) who determined that she lacked jurisdiction to hear his bond requests

_____

[1] Todd Blanche has replaced respondent Pamela Bondi as the Acting Attorney General of the United States, so I substitute him as a respondent under Federal Rule of Civil Procedure 25(d).

under § 1225(b). And in July 2026, Campos filed a motion for a temporary restraining order seeking his release.

I grant Campos's petition, joining the hundreds of district courts and the Second Circuit in rejecting the government's § 1225(b)(2) arguments. Campos was arrested while present in the United States and is thus not an arriving alien seeking admission, so the mandatory detention authorized by that statute does not apply to him. The only plausible authority for his pre-removal detention is § 1226(a), which allows noncitizens to seek bond. Campos was not given the opportunity to meaningfully seek that relief during the six months that he has been detained, so I find that the appropriate remedy is to order his release. And because granting the petition provides Campos with the relief he seeks, I deny as moot his motion for a temporary restraining order.

**Background**

Petitioner Brayan Noguera Campos is a Venezuelan citizen who came to the United States in September 2024 through a California port of entry after making an appointment with the CBP One application.[2] He was immediately paroled into the United States, and he settled in Montana.[3] Local law enforcement arrested him for domestic-violence charges on September 17, 2025, though that case was dismissed in November.[4] When Campos was released from county custody on December 3, 2025, ICE agents took him into federal immigration custody and began removal proceedings.[5] Campos was transferred to various detention facilities before ICE moved

---

[2] ECF No. 10-2 at 7.

[3] ECF No. 8 at 5.

[4] ECF No. 8-2.

[5] ECF No. 10-2 at 7.

him to the Nevada Southern Detention Center in Pahrump, Nevada, where he has been detained ever since.[6]

Campos sought a bond determination in February, but the IJ denied the motion, finding that the immigration court lacked jurisdiction to release him on bond because he was "charged as an arriving alien."[7]  In March, Campos filed a pro se habeas petition in this court, seeking his immediate release.[8]  I appointed counsel and, on March 31, 2026, Campos filed a counseled amended habeas petition.[9]  Campos alleges that his detention is unconstitutional and exceeds the government's statutory authority.  He maintains that the government lacks the authority to mandatorily detain him under § 1225(b) because that statute applies only to noncitizens detained at the border, but he was arrested within the interior of the United States.  He acknowledges that his detention may be authorized under § 1226(a), but he contends that he has not been given any of the due-process protections afforded to noncitizens detained under that statute.  He contends that the deprivation of his liberty interest violates substantive and procedural due process.  And just a few days ago, Campos filed a motion for a temporary restraining order seeking his immediate release on the same grounds.

## Discussion

**A.      This court has jurisdiction over Campos's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[10]  That writ permits a person who is in custody to challenge the legality of his

---

[6] ECF No. 8 at 5.

[7] ECF No. 10-3.

[8] ECF No. 4.

[9] ECF No. 8.

[10] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[11]

**B.     Section 1225(b)(2)(A) does not apply to Campos because the government's interpretation of that provision is incorrect.**

*1.     Section 1225(b)(2)(A) doesn't apply to noncitizens who are arrested within the interior of the United States.*

The government contends that Campos is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). That provision requires mandatory detention "in the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that an [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."[12] The government contends that, though Campos has been residing in the United States on parole since September 2024, he remains an "applicant for admission" and is seeking admission, and thus falls under § 1225(b)(2)(A)'s mandatory-detention scheme. It contends that § 1226(a), which grants noncitizen detainees the opportunity for release on bond, applies only to noncitizens who entered the United States legally but stay in the country illegally (e.g., arriving on a time-limited student visa, but staying past the visa's expiration).

This interpretation of the INA's pre-removal detention provisions, which the government began following in July 2025, upends decades of well-settled practice and has been the subject of

---

[11] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003). The respondents vaguely assert that this court "lacks jurisdiction to adjudicate this matter," but they do not support that conclusory statement with any authority or analysis. ECF No. 10 at 7. I have independently conducted a jurisdictional review and conclude that this court has habeas jurisdiction to review the legality of Campos's detention.

[12] 8 U.S.C. § 1225(b)(2)(A).

hundreds of court cases and a circuit split.[13]  Before the switch, the government applied § 1226(a) to noncitizens already present within the United States who are inadmissible, while § 1225(b)(2)(A) was reserved for citizens seeking admission after lawfully entering the country at a border after inspection and authorization.  The government contends that its new interpretation is more consistent with the statute's text.

Considering the text, structure, and history of these provisions, I conclude that the government's new interpretation is incorrect.  In the interest of judicial economy,[14] I incorporate by reference and adopt District Judge Richard F. Boulware II's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*,[15] finding that § 1225(b)(2)(A) cannot be read to encompass noncitizens who are already present in the United States, as opposed to those detained at its borders.  And to the extent that the government relies on the Fifth and Eighth Circuits' opinions conclusions that the government's interpretations are correct, I incorporate by reference and adopt the conflicting reasoning of the Second Circuit in *Cunha v. Freden*.[16]  After careful review and consideration, I conclude that the reasoning in *Jacobo Ramirez* and *Cunha* faithfully analyzes the statute and comes to the only plausible interpretation: § 1225(b)(2)(A) applies at the borders to noncitizens who seek admission to this country, and § 1226(a) applies to those

---

[13] *Compare Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) *with Cunha v. Freden*, __ F.4th __, 2026 WL 1146044 (2d Cir. 2026). The Ninth Circuit has at least one pending appeal confronting this issue.  *See Rodriquez-Vasquez v. Bostock*, Case No. 25-6842 (9th Cir.).

[14] *See, e.g.*, *Hernandez-Luna v. Noem*, 2025 WL 3102039, at *5 (D. Nev. Nov. 6, 2025) (noting that "much ink has been spilled on this [issue] in hundreds of orders issued in the last couple of months" and collecting cases).

[15] *Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026).  Specifically, I incorporate sections IV and VI.C.1, 2, and 4s' findings and conclusions concerning the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and the prior agency practice.

[16] *Cunha*, 2026 WL 1146044.

noncitizens already present in the United States who are determined to be inadmissible and placed in removal proceedings.

### 2. Campos isn't subject to mandatory detention based on his parole status.

The government contends that Campos's parole status alters this calculus. It relies on the Board of Immigration Appeals' decision in *Matter of Q. Li*[17] for the proposition that, when a noncitizen's parole is terminated, he must be returned to mandatory detention.[18] 8 U.S.C. § 1182(d)(5)(A) grants ICE officials the ability to grant parole to arriving noncitizens "for urgent humanitarian reasons or significant public benefit," but it provides that such parole must "not be regarded as an admission of the [noncitizen] and when the purposes of such parole [have] been served the [noncitizen must] forthwith return or be returned to the custody from which he was paroled and thereafter his case [must] continue to be dealt with in the same manner as that of any other application for admission to the United States."[19]

There are several holes in the government's argument. First, the government hasn't shown that Campos's parole was indeed terminated or revoked under the procedures described in 8 C.F.R. § 212.5, which require notice of termination to the noncitizen.[20] And there is no indication that Campos was ever in custody under § 1225(b), so it is not clear that he must be

---

[17] *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). I afford little deference to the BIA's interpretation of the relevant statutes. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385, 392 (2024).

[18] ECF No. 10 at 8.

[19] 8 U.S.C. § 1182(d)(5)(A). The government doesn't explain under what authority Campos was paroled, but it appears that Campos's CBP One reservation triggered 8 C.F.R. § 212.5(f), which provides that "[w]hen parole is authorized for a [noncitizen] who will travel to the United States without a visa, the [noncitizen must] be issued an appropriate document authorizing travel."

[20] 8 C.F.R. § 212.5(e)(2)(i).

"returned" to that custody under § 1182(d)(5)(A).[21]  And "though § 1182(d)(5)(A) refers to custody, there is 'nothing in [its] text that affirmatively authorizes detention.'"[22]  Because that statute is "not an independent authority to detain parolees,"[23] the government must rely on some other statutory authority to justify Campos's continued detention.  And, as discussed *supra*, § 1225(b)(2) cannot supply that authority because that statute mandates detention only for noncitizens present at a border and presently seeking admission.  Those qualifiers do not apply to Campos.  So I conclude that the only statute that could authorize Campos's detention is § 1226(a).

**C.      Campos's detention is governed by § 1226(a), which entitles him to certain due-process procedures that he has not received.**

>    *1.      Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.*

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States."  The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[24]  When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would

---

[21] *See Lubamba v. Stamper*, 2026 WL 632670, at *5 (D. Me. Mar. 6, 2026) (holding that a petitioner who received humanitarian parole through the CBP One app was not initially detained under § 1225(b)(2)); *see also Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 89–94 (D.D.C. 2025) (rejecting the government's § 1225(b) arguments under similar circumstances).

[22] *Fernandez v. Blanche*, 2026 WL 1493877, at *2 (D. Nev. May 28, 2026) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)).

[23] *Hernandez Villasmil v. Blanche*, 2026 WL 1235068, at *5 (N.D.N.Y. May 5, 2026).

[24] 8 U.S.C. §§ 1226(a)(1)–(2).

not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[25]

The noncitizen may then "request a bond hearing before an IJ at any time before a removal order becomes final" to contest the initial custody determination.[26]  At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[27]  The noncitizen may be represented by counsel and can submit evidence in his favor.[28]  He may also appeal the decision to the Board of Immigration Appeals (BIA).[29]  A noncitizen detained under § 1226(a) may also request a redetermination hearing if he experiences a material change in circumstances.[30]  He can appeal the IJ's decision of that redetermination hearing to the BIA too.

### 2. *Noncitizen detainees are also entitled to due process of law in immigration proceedings.*

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[31]  But the amount of process due to noncitizens "must account for the

---

[25] 8 C.F.R. § 236.1(c)(8).

[26] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[27] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[28] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[29] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

[30] 8 C.F.R. § 1003.19(e).

[31] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[32]  The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[33] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[34]  Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[35]

### 3.    *Campos's seven-month detention without due process warrants his release.*

Campos contends that he was not given adequate due-process protections to challenge his detention.  The parties agree that Campos was not given any bond hearings because the IJ in his case believed she lacked jurisdiction to consider that relief under § 1225(b)(2)(A).  Nor was Campos given any notice that his parole was revoked or terminated and he was not given an opportunity to challenge any apparent parole revocation.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."[36]  Campos has been detained for seven months.  But when evaluating Campos's interests under the first prong, the court "cannot simply

---

[32] *Id.* at 1206.

[33] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[34] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[35] *Mathews*, 424 U.S. at 335 (cleaned up).

[36] *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi*, 542 U.S. at 529 (finding that the interest in not being detained "is the most elemental of liberty interests").

9

count his months of detention and leave it at that."[37]  It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[38]  Here, Campos has received no process to challenge his detention, and the government's position that he is subject to mandatory detention under § 1225(b)(2)(A) forecloses his ability to seek any meaningful opportunity to be heard on his request for release on bond.  I find that the deprivation of Campos's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Campos's interest based on the government's reliance on § 1225(b)(2)(A)'s mandatory detention scheme.  Campos has been detained for more than seven months, and throughout that time he had no opportunity to contest his detention.  I find that Campos suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

It is undisputed that the government has a strong interest in enforcing immigration laws, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[39]  But I cannot conclude that the government's interests outweigh the petitioner's in this case.  The parties' interests are not mutually exclusive: the government's interest in enforcing the immigration laws and protecting the public from dangerous noncitizens can still be served while offering due-process protections to the noncitizens in its custody.

---

[37] *Rodriquez Diaz*, 53 F.4th at 1208.

[38] *Id.*

[39] *Id.* at 1208.

Under these circumstances, I find that release is the appropriate remedy for the continuing due-process violations that Campos has suffered.[40]  And because this finding affords Campos the relief he seeks, I do not reach the other claims in his amended petition and deny as moot his motion for a temporary restraining order.

**Conclusion**

IT IS THEREFORE ORDERED that petitioner Brayan Noguera Campos's amended petition for a writ of habeas corpus **[ECF No. 8] is GRANTED**.  **Petitioner Brayan Noguera Campos must be released from detention within three days of this order**.

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Campos's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Campos's release was effectuated.

IT IS FURTHER ORDERED that the respondents are enjoined from re-detaining Campos unless he is provided a pre-deprivation, individualized bond hearing under § 1226(a).

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Campos's motion for a temporary restraining order **[ECF No. 14] is DENIED as moot.**

---

[40] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").

The Clerk of Court is directed to SEND a copy of this order to the Warden of the Nevada Southern Detention Center in Pahrump, Nevada and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
July 9, 2026

12